## AMISH ET AL. V. GELNAUS ET AL.

1. **Religious Society:** ROMAN CATHOLIC CONGREGATION: SPECIAL FUND FOR BUILDING CHURCH: TITLE TO. If it be conceded that, under the laws and rules of the Roman Catholic church, the bishop of the diocese, and the priest of the parish under the direction of the bishop, are invested with the absolute control of the general funds and property of the church, yet a special fund raised by a congregation for the purpose of building a church does not belong to the bishop and priest, but to the congregation itself. And although such fund was placed in the hands of the priest for safe keeping, and the bishop afterwards joined the congregation, without its consent, to the congregation 'and parish at R., and requested the property to be delivered to the priest at R., and ordered the priest to go to R., which he did, and a part of the congregation went also, but a majority refused to go, and continued to worship, but without a priest, at the old place, *held* that the money so raised still belonged to the congregation, and that trustees appointed by the congregation were entitled to recover it from trustees, previously named by the congregation, to whom it had been committed by the priest when he left the congregation.

*Appeal from Johnson District Court.*

WEDNESDAY, MARCH 9.

THE plaintiffs claim that they are members of the congregation of St. Stanislaus, a parish or congregation of the Roman Catholic faith, of Liberty township, Johnson county, and that in February, 1883, at a meeting of said congregation, they were appointed trustees to receive from defendants a certain trust fund belonging to said congregation; that defendants had received said trust fund as former trustees of said congregation, but had been removed from their trust for good and sufficient reasons, and the plaintiffs appointed

trustees in their stead. There was a trial by the court without a jury, and judgment was rendered for the plaintiffs. Defendants appeal.

*Gannon & McQuirk* and *Remley & Remley*, for appellants.

*S. H. Fairall* and *Boal & Jackson*, for appellees.

ROTHROCK, J.—I. The learned judge of the district court before whom the case was tried reduced his findings of fact and conclusions of law to writing. They are as follows:

" (1) That prior to the year 1880 there existed in Liberty township, Johnson county, Iowa, a parish or congregation of the Roman Catholic faith, known as the congregation of St. Stanislaus, and that said congregation still exists.

" (2) That, about the years 1880–81, said congregation determined to erect a new church building on the site of the old one,—said old one having gone into decay to some extent; and for that purpose said congregation raised by subscription and fairs about $3,000.

" (3) That at said date said congregation had a priest duly set over them, and that plaintiffs Adam Amish, Gregory Gruss and Nicholas Doll were, in 1880, and have been ever since, members of said congregation of St. Stanislaus; that about 1881, in the fall, there was held a meeting of said congregation, at which nearly all the congregation were present; that the defendants, Benedict Gelhaus, Rochus Knebel and Joseph Schumm, were members of said congregation at that date; that they were then selected by said congregation as a committee to take charge of the moneys raised to build said church.

" (4) That after the money had been so raised by fairs, etc., held by said congregation, the bishop ordered the congregation not to build said church at St. Stanislaus, and ordered the congregation to celebrate or attend mass at Riverside, four or five miles distant; that about $825 of said money was

placed in the hands of said committee, and held by said committee; that no church building was erected, as contemplated, with said moneys; that they were not used for any purpose; that $567.58 of said moneys still remain in the hands of said committee, as appointed by said congregation in 1881, or in the hands and under the control of Rochus Knebel and B. Gelhaus; that since that time Joseph Schumm, one of said committee, left Iowa, and located in Nebraska, where he now resides; that the other members of said committee, viz., Rochus Knebel and Benedict Gelhaus, went to Riverside to attend church, and left the congregation of St. Stanislaus, and the priest of St. Stanislaus also went there,—that is, to Riverside; that he was ordered there by the bishop of the diocese in which Riverside and St. Stanislaus are situated.

"(5) That about February 1, 1883, said congregation of St. Stanislaus called a meeting of its members, and a meeting was held, at which a majority of its members were present; that, at said meeting then held, plaintiffs were appointed and chosen as a committee to receive and demand said money from defendants; that they subsequently, and before the bringing of this suit, demanded of said first committee said money, which was refused; that said congregation also, at said meeting, authorized plaintiffs to sue, if necessary, therefor.

"(6) That said St. Stanislaus congregation continued to worship at their church at St. Stanislaus after the bishop ordered them to Riverside, and still worship there; that the priest was ordered to Riverside by the bishop, and they have not had a priest since.

"(7) That in February, 1882, through Vicar-general H. Cosgrove, the bishop of the Roman Catholic Church expressed a desire that St. Stanislaus congregation attend mass at Riverside, and join the Riverside congregation; that all the articles belonging to St. Stanislaus, whatever they might be, be given into the custody of Father Brommenschenkel, the priest at Riverside; that the bishop, without

the consent of the St. Stanislaus congregation and parish, joined St. Stanislaus congregation with the Riverside parish, making the two one, and calling it Riverside parish.

"(8) That, although requested to do so, the plaintiffs refused to join the Riverside congregation and worship there; but the majority of the St. Stanislaus congregation refused to go to Riverside; that said St. Stanislaus congregation continued, and still continues, to worship at the St. Stanislaus church—that is, to hold prayer meetings, etc.,—but were without a priest, and were deprived of mass, unless they went to Riverside; that the church property at St. Stanislaus consisted of the church, together with forty acres of land, on which was the church and cemetery of St. Stanislaus congregation, where they have always buried and still bury their dead; that the title to said property is in the bishop of the Roman Catholic Church of the diocese, and does not belong to the congregation."

The court found the following conclusions of law: "(1) The money aforesaid was held by said first committee in trust for said congregation, and never was the property of the Roman Catholic Church, and was never under the control of the bishop or priest. (2) The second committee, the plaintiffs herein, are duly authorized and lawfully entitled to recover the same from said first committee, the defendants, or from Rochus Knebel and B. Gelhaus, the members of said committee served in this action."

Counsel for appellants attack the findings of fact as not supported by the evidence. They also insist that the court erred in rulings upon the admission and exclusion of evidence. In our opinion, the judgment should be affirmed upon the conceded facts in the case, regardless of the alleged errors. These conceded, or rather undisputed, facts are as follows:

(1) The money in dispute is the residue of a fund raised for the special purpose of building a church at St. Stanislaus.

(2) When the priest who officiated at that church was removed to Riverside, he called a meeting of the St. Stan-

islaus congregation, and requested the meeting to name a committee of three of the congregation, to take charge of the fund. The defendants were selected as such a committee. It ought to be stated, perhaps, that the priest testified on the trial that he merely requested the congregation to give him the names of three persons in whom they had confidence, and, the names being given, he appointed them. All of the other evidence in the case tends to show that the appointment was made by the congregation. But, even if the formal appointment was made by the priest after the defendants were selected by the congregation, the fact that the priest requested the congregation to name the committee was a recognition of the right of the congregation to have the money remain at St. Stanislaus, and not to be taken elsewhere. The priest, who was then in possession of the money, paid it over to the committee.

(3) After the removal of the priest to Riverside, two of the committee-men attended service at that place, and the other removed from the state.

(4) A number of families refused to assume church relations at Riverside or elsewhere. They remained as a voluntary association of persons, and, until within a short time before the trial in the court below, they assembled together for the purpose of religious worship.

(5) The congregation, or, rather, those that remained, held a meeting about February 1, 1883, and appointed the plaintiffs as a committee to receive and demand the money in question from the defendants.

Counsel for appellants insist that, under the laws and rules of the Roman Catholic Church, the bishop of the diocese, and the priest of the parish under the direction of the bishop, are invested with the absolute control of the funds and the property of the church, and the laity have no right to interfere with such control. If this fund had been raised for the general purposes of the church, and paid to the priest without any obligation upon him to apply it to a specific

purpose, the position of counsel might be correct. But it is conceded that the money was raised for a special purpose. This being so, it passed into the hands of the priest as a trust fund. It did not vest absolutely in either bishop or priest to be disposed of as they might think for the best interest of the church. The priest doubtless recognized this fact when he left the money at St. Stanislaus in the hands of the defendants. In regard to the action of the congregation in appointing the plaintiffs trustees instead of the defendants it is sufficient to say that the defendants were liable at any time to be removed. They did not hold their trust in perpetuity. They were the mere agents of the congregation, liable to be discharged at any time by the power that appointed them, and, when their successors were appointed, they should have surrendered the funds in their hands to the plaintiffs.

AFFIRMED.